Ronald D. FAILING, Plaintiff–Appellee,

v.

BURLINGTON NORTHERN RAILROAD COMPANY, a Delaware corporation, Defendant–Appellant.

No. 89CA1006.

Colorado Court of Appeals,
Div. IV.

March 28, 1991.

Rehearing Denied April 25, 1991.

Certiorari Denied Aug. 26, 1991.

Morrisard & Rossi, P.C., James L. Cox, Jr., Aurora, Irvin M. Kent, Aurora, for plaintiff-appellee.

Kraft, Johnson & Belt, Douglas J. Traeger, Robert N. Belt, Denver, for defendant-appellant.

Opinion by Judge JONES.

Defendant, Burlington Northern Railroad Company, appeals from a judgment entered on a jury verdict in favor of plaintiff, Ronald D. Failing, on a claim of negligence brought pursuant to the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60 (1982) (FELA). Defendant contends that the trial court erred in refusing to grant a mistrial and in giving an instruction to the jury stating that the lack of a restraint system on locomotive seats was not preempted by federal law and was admissible as evidence of negligence. Defendant further contends that the trial court erred in failing to instruct the jury to reduce to present value the portion of damages representing plaintiff's future lost earnings. We affirm as to the imposition of liability but reverse as to the award of damages.

Plaintiff was employed by defendant as a locomotive engineer. He sustained injuries while engaged in a procedure known as "kicking" which involves coupling the switching locomotive to a car or string of cars, then pushing and releasing them, thereby allowing the cars to roll onto a proper track for storage or for other uses.

Plaintiff alleges that as he was pushing a string of cars, another of defendant's employees (the pinpuller) failed to give a braking signal in time to prevent the string of cars plaintiff was kicking from colliding with cars already on the storage track. Plaintiff further alleges that as a result of the collision, he suffered permanent injuries to his back that prevent him from working as a locomotive engineer.

The jury returned a verdict in favor of plaintiff in the amount of $295,000, also finding 17.5% contributory negligence on his part. Based upon this verdict, the trial court entered a final judgment for plaintiff in the amount of $243,375.

I.

Defendant first contends that the trial court erred in refusing to grant it's motion for a mistrial based upon the court having admitted evidence that the locomotive in question lacked seatbelts and/or shoulder harnesses (restraint system). It contends that the subject of proper safety equipment to be used on locomotives has been preempted by federal statutes and regulations and that testimony regarding defendant's failure to install safety restraints was improper. Based upon identical reasoning, defendant also contends that the court erred in instructing the jury that the lack of a restraint system was admissible as evidence of negligence. We perceive no error.

Under the FELA, Congress has created a statutory means by which employees in certain industries, most notably the railroad industry, may obtain relief for injuries caused by their employers' negligence. Congress intended the FELA to be a broad, remedial statute, and courts have adopted a liberal standard of construction to facilitate Congress' objectives. *Urie v. Thompson,*

337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949).

Here, the negligence action brought by plaintiff under the FELA requires a showing that defendant had a duty of care to plaintiff, that it violated that duty of care, and that plaintiff was injured as a result.

An employer's duty of care in a FELA action is based upon a reasonable foreseeability of harm. *Gallick v. Baltimore & O.R.R.*, 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963). The employer's conduct is measured by the degree of care that persons of ordinary, reasonable prudence would use under the same or similar circumstances and by what harms these same persons would anticipate as resulting from a particular condition. *Ackley v. Chicago & North Western Transportation Co.*, 820 F.2d 263 (8th Cir.1987).

Although no specific standards of care are set forth in the FELA, certain duties have become an integral part of the statute. *See Bailey v. Central Vermont Ry.*, 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444 (1943) (duty to provide a reasonably safe workplace); *Baltimore & Ohio Southwestern R.R. v. Carroll*, 280 U.S. 491, 50 S.Ct. 182, 74 L.Ed. 566 (1930) (duty to provide reasonably safe tools and equipment).

■ The duty to provide a reasonably safe place to work, while measured by foreseeability standards, is broader under the FELA than a general duty of due care and becomes more imperative as the risk to the employee increases. *Ackley v. Chicago & North Western Transportation Co., supra.*

Defendant relies upon case law emphasizing a railroad's duty under various federal railroad safety statutes such as the Boiler Inspection Act, 45 U.S.C. § 23, et seq. (1976) (BIA), and the Federal Railroad Safety Act, 45 U.S.C. §§ 421–444 (1976) (FRSA).

The BIA imposes upon carriers by railroad an absolute duty to maintain their locomotives in safe and proper condition, and provides in pertinent part:

"It shall be unlawful for any [railroad] to use or permit to be used on its line any locomotive unless said locomotive ... and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same be employed in the active service of such carrier, without unnecessary peril to life or limb...." 45 U.S.C. § 23 (1924).

*See Lilly v. Grand Trunk Western R.R. Co.*, 317 U.S. 481, 63 S.Ct. 347, 87 L.Ed. 411 (1943).

The FRSA was implemented "to promote safety in all areas of railroad operations." 45 U.S.C. § 421 (1976). The statute confers upon the Secretary of Transportation authority to prescribe "rules, regulations, orders, and standards for all areas of railroad safety supplementing provisions of law and regulations in effect...." 45 U.S.C. § 431(a) (1976). The FRSA does not subsume or recodify previously existing federal statutes on railroad safety. Rather, it leaves existing statutes intact, including the BIA, and authorizes the Secretary to fill interstitial areas of railroad safety with supplemental regulation.

■ The purposes of the above safety statutes stand in sharp contrast to the purposes of the FELA, which is a tort-remedy statute. *See McKenna v. Washington Metropolitan Area Transit Authority*, 829 F.2d 186 (D.C.Cir.1987). Although a violation of federal railroad safety statutes and regulations resulting in injury to an employee in nearly all cases creates liability under the FELA, *see Kernan v. American Dredging Co.*, 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958), we refuse to adopt defendant's assertion that compliance with such statutes and regulations precludes a finding of negligence under the FELA. Indeed, such a position would contradict the legal principle that compliance with a statute or administrative regulation does not prevent a finding of negligence if a reasonable person would have taken additional precautions under the circumstances. *See Pratico v. Portland Terminal Co.*, 783 F.2d 255 (1st Cir.1985) (absent a statutory violation, traditional negligence principles apply in an action under the FELA). *See*

*also* Restatement (Second) of Torts § 288(C) (1964).

Moreover, the case of *Mosco v. Baltimore & Ohio R.R.*, 817 F.2d 1088 (4th Cir.1987) supports the proposition that negligence may exist under the FELA despite a railroad employer's full compliance with federal safety regulations.

In *Mosco,* an engineer was injured by a rock thrown through a locomotive window and subsequently brought claims against his employer under both the BIA and the FELA. The engineer claimed that, given the fact that he had reported stoning incidents to the employer on numerous occasions in the past, the employer was negligent in failing to install protective screens over the windows. Before trial began, the employer filed a motion *in limine* to preclude evidence of the absence of protective screens since federal safety regulations did. not require such screens. The trial court granted the employer's motion concluding that, for purposes of the engineer's BIA claim, such evidence was irrelevant. At trial the engineer presented no evidence of the locomotive's lack of protective screens, apparently believing the trial court's exclusionary order applied to his FELA claim as well.

In upholding a directed verdict in favor of the employer, the U.S. Court of Appeals for the 4th Circuit noted the following:

"Although [the engineer] had no viable Boiler Inspection Act claim based upon the absence of protective devices from the windows of the locomotive's cab, it is possible that he might have stated a meritorious FELA claim based on the same facts. As the Supreme Court has indicated, *devices or equipment that do not fall within the coverage of the Boiler Inspection Act are not therefore excluded from the usual rules of liability.* [*Southern Railway Co. v. Lunsford,* 297 U.S. 398, 56 S.Ct. 504, 80 L.Ed. 740 (1936).] If a jury had found that the [employer] was negligent in failing to install protective devices over the cab windows, it could have returned a verdict for [the engineer] based upon a breach of

[the employer's] duty of reasonable care under the FELA." (emphasis added)

Another case, *Morgan v. Consolidated Rail Corp.,* 509 F.Supp. 281 (S.D.N.Y.1980), also supports the conclusion that a railroad may comply with the BIA and still be negligent under the FELA. *Morgan* also involved a suit by a railroad employee pursuant to both the FELA and the BIA, again based upon the railroad's failure to install safety screens on train windows. The jury found no liability under the BIA but found the railroad negligent under the FELA.

Responding to the railroad's contention that these two verdicts were inconsistent, the *Morgan* court rationalized the result as follows:

"The jury could well have concluded that the locomotive, with its special strength glass windows and without alternative means of ventilation, was 'in proper condition and safe to operate ... without unnecessary peril to life or limb' but that Conrail simply was negligent under the circumstances in not adding screens...."

■ Thus, we conclude that the BIA and FRSA do not preempt plaintiff, under the circumstances of this case, from his claim that it was negligent for defendant not to place a restraint system in the locomotive. We further conclude that although defendant, arguably, did not violate any federal safety statutes or regulations in failing to install such restraint system, evidence of the lack of such restraints was properly admitted as evidence that defendant was negligent under the circumstances.

There is no error in giving instructions which adequately and correctly inform the jury as to the applicable law. *Felder v. Union Pacific R.R. Co.,* 660 P.2d 911 (Colo. App.1982). Accordingly, the trial court did not commit error because the instruction concerning whether defendant was negligent in not "equipping [plaintiff's] locomotive ... with [a restraint system]" properly set forth the pertinent law and was supported by expert testimony and other evidence.

## II.

■ Defendant next contends, *inter alia,* that the trial court erred in refusing its tendered instruction requiring the jury to reduce any lost future earnings to present value. We agree that the trial court should have given an instruction concerning present value of lost future earnings and that, because it did not, the portion of the judgment pertaining to damages must be reversed, and the cause remanded for a new trial on damages.

An award of damages for future monetary loss under the FELA *must* be adjusted to present value. *St. Louis Southwestern Ry. Co. v. Dickerson,* 470 U.S. 409, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985).

The failure to instruct the jury that present value is the proper measure of a damages award is error. *Monessen Southwestern Ry. Co. v. Morgan,* 486 U.S. 330, 108 S.Ct. 1837, 100 L.Ed.2d 349 (1988). And, it is error for a court to take no steps to ensure that an award under the FELA is reduced to its approximate present value. *Chesapeake & Ohio Ry. Co. v. Kelly,* 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117 (1916).

■ As a general rule, the jury is entitled to receive evidence and appropriate mathematical guidance on the method of adjusting future losses to present worth. *See Ballantine v. Central R.R. of New Jersey,* 460 F.2d 540 (3rd Cir.1972). However, if there is no evidence introduced during the trial as to any particular method of reducing further damages to present worth, the trial court is not required to formulate a method in its instructions but may instead give a general instruction on the jury's duty in this regard. *Heater v. Chesapeake & Ohio Ry. Co.,* 497 F.2d 1243 (7th Cir.1974); *Pennsylvania R.R. Co. v. McKinley,* 288 F.2d 262 (6th Cir.1961); *Gannaway v. Missouri–Kansas–Texas R.R.,* 2 Kan.App.2d 81, 575 P.2d 566 (1978). *Cf. Miller v. Union Pacific R.R. Co.,* 900 F.2d 223 (10th Cir.1990); *Brady v. Burlington Northern R.R. Co.,* 752 P.2d 592 (Colo.App.1988).

Under such circumstances, it is even permissible for the trial court to recommend to the jury one or more methods of calculating present value so long as the court does not, in effect, preempt the jury's function. *Monessen Southwestern Ry. Co. v. Morgan, supra.* See *Cassino v. Reichhold Chemicals, Inc.,* 817 F.2d 1338 (9th Cir. 1987) (jurors are sufficiently intelligent to reduce an award to present value if properly instructed), *cert. denied,* 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988); *Bonura v. Sea Land Service, Inc.,* 505 F.2d 665 (5th Cir.1974).

In the *Brady* case, this court set forth four possible computations of present value based on different evidentiary scenarios with respect to whether either or both inflation rate and discount rate had been proven. We also set forth two "approved" approaches to the mathematical calculations of present value when both rate factors have been established by competent evidence. These holdings in *Brady* may be considered helpful by trial courts when instructing jurors as to present value. *See Eversole v. Consolidated Rail Corp.,* 551 N.E.2d 846 (Ind.App. 1 Dist.1990).

Here, the trial court received no evidence as to present value from either party (other than a value table offered by defendant which the court refused to consider or to permit in evidence). As a result, the trial court gave no present value instruction.

We conclude that the trial court was required to give at least a general instruction that plaintiff's future monetary loss must be reduced to present value and that such a complete failure to instruct the jury regarding present value was error. *Monessen Southwestern Ry. Co. v. Morgan, supra; Aldridge v. Baltimore & Ohio R.R. Co.,* 866 F.2d 111 (4th Cir.1989). Therefore, on remand, the trial court must admit competent evidence from the parties, based upon a proper foundation, concerning the present value of future monetary losses.

Because of the resolution of this matter, we need not consider defendant's other contentions.

The judgment is affirmed as to liability. However, the portion of the judgment relating to plaintiff's damages is reversed,

and the cause is remanded for a new trial on the issue of damages including the determination of the present value of plaintiff's future monetary loss.

METZGER and MARQUEZ, JJ., concur.