Russell L. NOVELL, Plaintiff–Appellee
and Cross–Appellant,

v.

AMERICAN GUARANTEE AND LIABIL-
ITY INSURANCE CO., a New York cor-
poration, Defendant–Appellant and
Cross–Appellee.

No. 98CA0072.

Colorado Court of Appeals,
Div. IV.

Sept. 30, 1999.

As Modified on Denial of Rehearing
Dec. 23, 1999.

Certiorari Denied Jan. 16, 2001.

French & Stone, P.C., David M. Haynes, Boulder, Colorado; Miller & Harrison, LLC, Robert Bruce Miller, Boulder, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Spies, Powers & Robinson, P.C., Brendan O. Powers, Jack D. Robinson, Denver, Colorado; Gibson, Dunn & Crutcher, LLP, Gregory J. Kerwin, Elena L. Lawrence, Denver, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge RULAND.

Plaintiff, Russell Lee Novell, filed this action to recover damages from defendant, American Guarantee and Liability Insurance Company, for breach of an insurance contract, bad faith breach of that contract, and willful and wanton misconduct. Defendant appeals from the judgment entered on a jury verdict awarding plaintiff $556,000 in actual damages together with $556,000 in punitive damages. Plaintiff cross-appeals relative to the trial court's award of costs and its failure to award interest on the judgment. We affirm but remand the case for additional proceedings.

Plaintiff purchased a commercial all-risk insurance policy from defendant for a commercial building owned by plaintiff in which

he operated a martial arts training program. Plaintiff first noticed cracking in the building walls in September 1993. He reported the damage to defendant's agent.

Defendant hired an independent adjuster to conduct an investigation. Thereafter, the adjuster denied the claim on the basis of a policy exclusion for damages caused by "settling."

In March 1995, plaintiff again contacted defendant's agent because the cracking in the walls had increased significantly. At this juncture, plaintiff had learned that a municipal water line was being repaired in front of a building approximately three lots away from his building. Plaintiff retained a structural engineer, but the engineer could not determine the cause of the cracking based only upon a visual inspection.

Still later, plaintiff learned that water was "bubbling up like an artesian well" through the basement floor in an adjacent building. The city subsequently found a substantial leak in an abandoned water line and repaired it.

Plaintiff then advised defendant that he thought the water main break had caused his damage. Nevertheless, after additional review, the claim was again denied based upon the referenced exclusion.

The policy exclusion in dispute provides as follows:

We will not pay for loss or damage caused by or resulting from any of the following:
. . .

. . . .

(4) Settling, cracking, shrinking or expansion . . .
but if loss or damage by the 'specified causes of loss' . . . results, we will pay for that resulting loss or damage.

"Specified causes of loss" was defined in part as "water damage." Water damage includes "accidental discharge or leakage of water . . . as the direct result of the breaking or cracking of any part of a system or appliance containing water. . . ."

By its verdict, the jury determined that the damage to plaintiff's building was caused by the leaking water mains.

## I.

Defendant first contends that the trial court erred in granting plaintiff's pretrial summary judgment motion relative to interpretation of the policy. The court ruled that the exclusion for "settling" did not apply in this case if the cracking resulted from leaking water mains. We perceive no error in that ruling.

Relying upon *Kane v. Royal Insurance Co.,* 768 P.2d 678 (Colo.1989), defendant argues that the policy makes no distinction between settling resulting from natural causes and settling caused by a leaking water main and that, therefore, we must apply the plain meaning of the policy provision and conclude that coverage was not available. The *Kane* court held that an exclusion for damages caused by a "flood" applies regardless whether the flood is caused by natural forces or by third-party negligence.

Defendant also relies upon cases such as *Montee v. State Farm Fire & Casualty Co.,* 99 Or.App. 401, 782 P.2d 435 (1989) in which the settling exclusion has been applied regardless whether settling is caused by deterioration in soil conditions or accidental water discharge. *See also Bentley v. National Standard Insurance Co.,* 507 S.W.2d 652 (Tex.Civ.App.1974).

Relying on cases such as *Ariston Airline & Catering Supply Co. v. Forbes,* 211 N.J.Super. 472, 511 A.2d 1278 (1986) and *Hartford Accident & Indemnity Co. v. Phelps,* 294 So.2d 362 (Fla.App.1974), plaintiff responds that the settlement exclusion should be construed to apply only to damage resulting from natural conditions over time. In the alternative, plaintiff contends that the trial court was correct in its conclusion that the exclusion is ambiguous and must be construed against defendant. We agree with the trial court's analysis.

Insurance contracts like other contracts should be interpreted and applied based upon the plain and ordinary meaning of the words used. In this analysis, reference should be made to all of the applicable provisions of the instrument. *Griffin v. United Bank,* 198 Colo. 239, 599 P.2d 866

(1979). However, if the contract is ambiguous, it must be construed against the insurer. *Republic Insurance Co. v. Jernigan,* 753 P.2d 229 (Colo.1988). And, the determination whether the contract is ambiguous presents a legal question and not a question of fact. *Pepcol Manufacturing Co. v. Denver Union Corp.,* 687 P.2d 1310 (Colo.1984).

Here, the policy is an all-risk policy drafted to cover all damages to the insured's building unless coverage for that type of loss is expressly excluded. *See Steamboat Development Corp. v. Bacjac Industries, Inc.,* 701 P.2d 127 (Colo.App.1985).

With reference to the exclusion for "settling," only limited words of causation are included. That is, only losses "caused by or resulting from" the settling are excluded. However, it is not clear whether the efficient cause of the settling can be only water from a naturally occurring condition such as an underground water table, or instead, water from broken pipes. *See Koncilja v. Trinity Universal Insurance Co.,* 35 Colo.App. 27, 528 P.2d 939 (1974) (overruled on other grounds in *Kane, supra* ). Further, the exclusion does not incorporate the broader language "caused by, resulting from, contributed to, or aggravated by . . . ." that the court in *Kane* found sufficient to avoid the insured's claim of ambiguity in use of the term "flood" in that policy exclusion.

Thus, we agree with the trial court's conclusion that by failing to use the general language appearing in the policy addressed in *Kane,* the coverage and exclusion provisions are inconsistent and thus ambiguous.

As a result, and following the analysis in *Kane,* defendant's policy must be construed to afford coverage for plaintiff's loss. *See Broome v. Allstate Insurance Co.,* 144 Ga. App. 318, 241 S.E.2d 34 (1977) (policy ambiguous relative to settlement exclusion and thus construed against carrier); *New Hampshire Insurance Co. v. Robertson,* 352 So.2d 1307 (Miss.1977) (exclusions ambiguous in context of coverage for water damage).

For the same reason, we do not view defendant's reliance upon the cases from other jurisdictions to be warranted because those courts do not address the issue of ambiguity created by the limited language of causation in the exclusion as compared to the broad language of coverage found here in defendant's policy.

## II.

Defendant next contends that the trial court erred in placing the burden of proof on it to establish that the exclusion was applicable because settlement allegedly resulted from natural causes. According to defendant, the burden should have been on plaintiff to prove that the cause of the settling was leaking water. We disagree with this contention.

Under an all-risk policy, once the insured demonstrates a loss to the property covered by the policy, the insurance carrier has the burden of proving that the proximate cause of the loss was excluded by the policy language. *See Pan American World Airways, Inc. v. Aetna Casualty & Surety Co.,* 505 F.2d 989 (2d Cir.1974); *see also Hecla Mining Co. v. New Hampshire Insurance Co.,* 811 P.2d 1083 (Colo.1991). Contrary to defendant's argument, that burden does not shift to plaintiff simply because the settlement exclusion is limited to settlement based upon natural causes.

## III.

Defendant next contends that the trial court erred in permitting the expert witnesses called by plaintiff to testify in two respects. First, relying upon the analysis in *Specht v. Jensen,* 853 F.2d 805 (10th Cir. 1988), defendant contends that the experts should not have been allowed to opine that the policy covered settlement resulting from leaking water mains. Second, defendant argues that they should not have been permitted to testify concerning what they viewed as unreasonable conduct by defendant's representatives. We find no reversible error.

Even if we assume that the opinions concerning policy coverage should not have been allowed because they are a statement of legal conclusion deemed improper by the court in *Specht,* we conclude that any error was harmless. *See* CRE 103(a). The trial

court correctly ruled in advance of trial that the exclusion did not apply to settlement resulting from a leaking water main. The adjuster who handled the claim for American interpreted the policy as covering this type of loss and so testified. The jury was instructed consistent with the court's ruling at the conclusion of the trial. Hence, the testimony of the experts simply reiterated a conclusion that the adjuster agreed with and that was consistent with the trial court's ruling.

■ To the extent that defendant challenges the expert testimony concerning the bad faith handling of plaintiff's claim, we find no abuse of discretion in the court's decision to admit this testimony. *See Grogan v. Taylor*, 877 P.2d 1374 (Colo.App.1993) (trial court is granted broad discretion to determine the appropriate scope of expert testimony).

As in *Peiffer v. State Farm Mutual Automobile Insurance Co.*, 940 P.2d 967 (Colo. App.1996), the testimony was helpful in explaining both the applicable statutes governing defendant's claim processing and the issues relative to claims management practice. *See also Klein v. State Farm Mutual Automobile Insurance Co.*, 948 P.2d 43 (Colo.App. 1997).

### IV.

■ Contrary to defendant's contention, we find no abuse of discretion by the trial court in denying a motion to bifurcate the case into separate trials for the breach of contract and bad faith claims. *See Gaede v. District Court*, 676 P.2d 1186 (Colo.1984) (the trial court is vested with discretion to determine whether a motion to bifurcate should be granted). The duplication in evidence and attorney's fees created by separate trials would have been, as the court noted, significant.

### V.

Defendant contends that the trial court erred in denying its motions for directed verdict and for judgment notwithstanding the verdict on plaintiff's claim for bad faith breach and on his request for an award of punitive damages based upon the bad faith claim.

■ In determining whether the motion for directed verdict should be granted, we must view the evidence in the light most favorable to plaintiff, and we must draw every reasonable inference which may legitimately be drawn in his favor. *See Burgess v. Mid–Century Insurance Co.*, 841 P.2d 325 (Colo.App.1992). Review of a motion for judgment notwithstanding the verdict is by a similar standard.

■ Further, we may not overturn the trial court's ruling on these motions unless the evidence is such that a reasonable person could not reach the same conclusion as the jury based upon the evidence presented. *South Park Aggregates, Inc. v. Northwestern National Insurance Co.*, 847 P.2d 218 (Colo. App.1992).

■ To establish the bad faith claim, plaintiff was required to prove that defendant acted unreasonably, with knowledge that its conduct was unreasonable or in reckless disregard of whether its conduct was unreasonable. *Travelers Insurance Co. v. Savio*, 706 P.2d 1258 (Colo.1985).

■ In this context, for example, one of plaintiff's experts testified that, in his opinion, defendant had violated § 10–3–1113(4), C.R.S.1999, in handling plaintiff's claim. Specifically, the expert testimony indicated that defendant knew or should have known that coverage was available if the cause of the settling was leaking water lines. However, defendant did not disclose this fact to plaintiff.

Further, while defendant admitted that it owed plaintiff a duty to conduct a thorough investigation, no investigation was in fact funded to determine the precise cause of the cracking.

In addition and according to the experts, defendant arbitrarily rejected evidence supporting plaintiff's claim even though defendant had no expert analysis to support its position. Further, defendant persisted in its position for a lengthy period. Finally, the testimony of both experts supports a finding that defendant's conduct demonstrated purposeful and deliberate decisions not to pay

the claim notwithstanding the evidence of coverage. *See Herod v. Colorado Farm Bureau Mutual Insurance Co.*, 928 P.2d 834 (Colo.App.1996).

To the extent that defendant relies upon its engineering report that a leaking water main was not the cause of the difficulty, we note that the engineer was not retained until the litigation had begun. The jury may well have found that engaging this expert came too late to rectify the previous bad faith handling of the claim.

Hence, we find no basis for overturning the jury's verdict relative to a bad faith breach of contract. For the same reasons, the record provides a basis for the jury's award of damages.

## VI.

Defendant contends that the evidence was insufficient to support the jury's award of $356,000 in economic damages. Specifically, defendant argues that plaintiff's self-serving testimony about his loss of business if the building were closed for repairs was speculative. Defendant notes that the court excluded testimony from plaintiff's expert on this issue because the data for the expert's analysis was obtained from plaintiff. We perceive no basis for reversal of the judgment.

Even if we assume that the jury's award was based in part on plaintiff's testimony relative to loss of business, defendant fails to point to any objection at trial to this testimony based upon the ground urged here. *See* CRE 103(a)(1); *see also Flexisystems, Inc. v. American Standards Testing Bureau, Inc.*, 847 P.2d 207 (Colo.App.1992) (no objection to testimony concerning lost sales commissions).

The damage instruction on breach of contract included "loss of past and future income" and the instruction on bad faith breach specifically included the same item. However, defendant fails to direct us to any part of the record where an objection to either damage instruction was made on grounds that the only evidence to support a finding was speculative. *See Wales v. Howard*, 164 Colo. 167, 433 P.2d 493 (1967) (no objection to personal injury damage instruc-

tion); *Mucci v. Falcon School District No. 49*, 655 P.2d 422 (Colo.App.1982) (no objection to damage instruction for claim under federal civil rights statute); *see also Lee v. Durango Music*, 144 Colo. 270, 355 P.2d 1083 (1960) (issue preserved by objection to instruction on lost profits).

Under these circumstances, we do not view the issue as having been properly preserved for review. *See Flexisystems, Inc. v. American Standards Testing Bureau, Inc., supra.*

## VII.

In his cross-appeal, plaintiff first contends that the trial court erred in reducing the amount requested as costs without explaining the basis for its decision. We disagree.

A trial court's findings must be sufficient for this court to understand and review the order awarding costs. *Van Steenhouse v. Jacor Broadcasting of Colorado, Inc.*, 935 P.2d 49 (Colo.App.1996). However, a trial court is granted broad discretion in determining the appropriate amount to be awarded as costs. *See Dewey v. Hardy*, 917 P.2d 305 (Colo.App.1995). And here, the trial court specifically found that, after reviewing the bill of costs and the objections, its award represented what the court deemed "reasonably necessary for the development of plaintiff's case."

In our view, this finding reveals the basis for the award, and we find no abuse of discretion in its decision.

We decline to consider the issue as to an award of interest upon the judgment because that issue has not yet been addressed by the trial court.

The judgment is affirmed, and the cause is remanded for consideration of plaintiff's outstanding request for an award of interest on the judgment together with an award of costs for one witness on which the court reserved its ruling.

Judge BRIGGS and Judge KAPELKE concur.